IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | Criminal No. **PJM 95-294-1** |
| | * | |
| **DONALD WARDRICK,** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Wardrick was an integral part of an international smuggling enterprise that used young Americans as couriers to transport heroin from Pakistan into the Washington, D.C. area. *See United States v. Wardrick*, 141 F.3d 1161 (Table) at *1 (4th Cir. 1998). On June 10, 1996, a jury found him and two codefendants guilty of several heroin-related offenses: conspiracy to distribute heroin in violation of 21 U.S.C. § 846; possession of heroin with the intent to distribute it in violation of 21 U.S.C. § 841; and importation of heroin in violation of 21 U.S.C. §§ 952 and 963. On October 3, 1996, the Court sentenced Wardrick to 360 months imprisonment to be followed by a term of supervised release of five years.

On January 15, 2020, the Bureau of Prisons ("BOP") transferred Wardrick from Federal Correctional Institution Cumberland to Hope Village Halfway House in Washington, D.C. Shortly thereafter, on approximately January 29, 2020, he was placed on home confinement.[1]

On April 14, 2020, through counsel, Wardrick filed the instant Emergency Motion for Termination of Home Detention / Home Confinement and Immediate Placement on Supervised Release. ECF No. 310. He submits that his home confinement unnecessarily exposes his 86-year-

---

[1] Wardrick states that his projected release date is April 21, 2021. *See* ECF No. 310, p. 2.

1

old mother with whom he resides to COVID-19 and requests his immediate placement on supervised release.

For the reasons that follow, Wardrick's Motion is **DENIED**.

I.

Wardrick's motion leaves many questions unanswered.

To begin, he fails to identify the legal basis for his request. Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c)(1)(B); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (*citing United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009) ("[T]here is no 'inherent authority' for a district court to modify a sentence as it pleases; indeed a district court's discretion to modify a sentence is an exception to [§ 3582's] general rule [barring modification].")).

The Government, not unreasonably, proceeds on the assumption that Wardrick intends to rely on 18 U.S.C. § 3582(c)(1)(A), which permits a court to reduce a sentence upon a showing of "extraordinary and compelling reasons." Indeed, courts within this district, including this one, have recognized that the current pandemic may create the circumstances for such a finding. But judges in this district have also been virtually uniform in holding that defendants must exhaust their administrative remedies prior to seeking such relief from the courts. *See, e.g., United States v. Taylor*, ELH-13-269, 2020 WL 3447761, at *6 (D. Md. June 23, 2020) (collecting cases); *United States v. Johnson*, --- F.Supp.3d ----, 2020 WL 1663360, at *5 (D. Md. Apr. 3, 2020).[2] Specifically, pursuant to 18 U.S.C. § 3582(c), a defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or 30 days

---

[2] That is not to say that situations may exist where exhaustion of the administrative process is futile and therefore deemed exhausted. *See United States v. Barringer*, PJM-13-129, 2020 WL 2557035, at * 3 (D. Md. May 19, 2020). Wardrick has not put forward such a justification.

2

must have lapsed from "receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Wardrick has provided no indication that he has submitted the requisite request to the warden and the Government avers that the BOP has no such request in its tracking system. *See* ECF No. 312, p. 8. This finding alone is sufficient for the Court to deny Wardrick's motion. *See United States v. Hunter*, DKC 12-0086-4, 2020 WL 4501494 (D. Md. Aug. 5, 2020); *Taylor* at \*6.

II.

Wardrick also fails to address numerous important factual items.

He says that since being placed in home confinement he has been employed by Walmart at its store in Bowie, Maryland. That job, he says, requires that he "come into contact with numerous other employees and store customers." ECF No. 310, p. 2. This presents a problem, he explains, because he resides with his 86-year-old mother, for whom he says he is the "primary caretaker" and whose physicians have expressed concern about him potentially exposing her to the coronavirus. *Id.*

Wardrick offers no reason, let alone evidence, indicating why his workplace at Walmart is a particularly risky environment. He submits a letter from his manager, but it makes no mention of Wardrick's potential exposure to the virus. *See* ECF No. 313, p. 2. Similarly, Wardrick provides no documentation to support the purported concerns of his mother's physicians to explain why she, apart from her age, is particularly susceptible to the dangers of virus. Nor is it clear, if he truly is his mother's primary care giver, who will be left to tend to her needs if he no longer resides with her. Most important, perhaps, he fails to identify some other location where he would reside if his

motion is granted and why home confinement could not be imposed at that location.[3] In short, Wardrick has not demonstrated any extraordinary and compelling reason to grant his request. *See, e.g.*, *United States v. Martin*, JKB-15-646, 2020 WL 3833390, at *2 (D. Md. July 8, 2020) ("Absent any explanation for how he satisfies the standards required for release, the Court cannot find that extraordinary and compelling reasons exist which would warrant a sentence reduction").

III.

Wardrick has had ample time to address the aforementioned concerns. Based on the "emergency" nature of his filing, the Court ordered an expedited briefing schedule. *See* ECF No. 311. While the Government complied by timely submitting its response in opposition, Wardrick never filed reply brief. On June 2, 2020, over three weeks after the deadline for him to reply, Wardrick filed correspondence with the Court enclosing two letters, neither of which substantially addressed the deficiencies identified by Government, and informing the Court that his lawyer had fallen ill with COVID-19. *See* ECF No. 313.[4] Responding to his predicament, the Court postponed ruling on his motion and, on June 22, 2020, gave Wardrick an additional opportunity to update the Court. *See* ECF No. 314. Now, over a month and a half later, the Court has received nothing from Wardrick or his attorney.

Under the circumstances, Wardrick's Emergency Motion for Termination of Home Detention / Home Confinement and Immediate Placement on Supervised Release is **DENIED**.[5]

---

[3] It appears that some of his alleged problems, including the supposed risks associated with his place of employment, could be resolved by his Residential Reentry Manager (RRM), a contractor authorized by the BOP to oversee his home confinement. According to the Government, Wardrick's RRM has stated that he or she would be amenable to a request for different employment if Wardrick could show a viable and verifiable reason for the change. *See* ECF No. 312, p. 4.

[4] The first letter was from his manager at Walmart and the second from his Hope Village case manager. *See* ECF No. 313.

[5] The Court, however, in no way intends to preclude Wardrick's RRM from seeking an alternate residence for him, to assuage his concern for his mother's health.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**August 18, 2020**